IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL CASE NO. 3:23-cv-00031-MR

JOHN M. COPELAND,     )
                      )
          Plaintiff,  )
                      )
vs.                   )     **O R D E R**
                      )
MECKLENBURG COUNTY JAIL, )
et al.,               )
                      )
          Defendants. )
_____ )

**THIS MATTER** is before the Court on initial review of the pro se Complaint. [Doc. 1]. Also pending is the Plaintiff's Motion to Appoint Counsel.[1] [Doc. 2]. The Plaintiff is proceeding in forma pauperis. [Doc. 12].

## I. BACKGROUND

The pro se incarcerated Plaintiff filed this action in the United States District Court for the Eastern District of North Carolina pursuant to 42 U.S.C. § 1983, addressing incidents that allegedly occurred at the Mecklenburg

---

[1] The Plaintiff's Motion is unsigned. See Fed. R. Civ. P. 11. The Court will not direct the Plaintiff to sign the Motion at this time; however, because it would be denied even if it were signed.

County Jail (MCJ).[2] The case was transferred to this Court for initial review. [Doc. 4].

The Plaintiff names as Defendants in their individual and official capacities: Mecklenburg County; the City of Charlotte; the MCJ; the North Carolina Sheriff's Education and Training Standards Commission;[3] Garry McFadden, the Mecklenburg County Sheriff; "Sheriff John Doe;" "Jail Medical Staff John Doe;" and "County Jail Officers John Doe." [Doc. 1 at 1].

The Plaintiff claims that he was transported to MCJ in November 2019, at which time he was healthy and had no medical issues. The Plaintiff alleges that he told a John Doe officer that he "wasn't feeling well" on October 4, 2021, and the officer told him to put a complaint in the facility kiosk, which the Plaintiff did. [Doc. 1 at 2]. The Plaintiff was taken to the medical station on October 7, where he told "nurses John Doe"[4] that he "was not feeling well." [Id. at 2]. The Plaintiff was given a COVID-19 test, which was negative, and the Plaintiff was not otherwise examined. [Id.]. The Plaintiff was told that nothing was wrong and to go back to his cell, over the Plaintiff's "objections." [Id.]. On October 17, the Plaintiff suffered a "massive stroke"

---

[2] The Plaintiff is now a prisoner of the State of North Carolina at the Maury Correctional Institution.

[3] "Sheriff Ed. Standard Comm" in the Complaint.

[4] This allegation appears to refer to Defendant "Medical Staff John Doe."

and fell in his cell. He was found by "officers" and he was taken to an outside hospital that same day. [Id.]. The Plaintiff was in a coma for four or five days, and he was in ICU for about a month. [Id.]. The Plaintiff also caught COVID-19. [Id. at 4].

For injuries, the Plaintiff claims paralysis on the left side of his body, permanent blindness, permanent lung disease from COVID-19, loss of taste, and a need for lifetime physical therapy and medication. [Id.]. He seeks compensatory and punitive damages, injunctive relief, and any other relief the court deems just and appropriate. [Id. at 8]. He also seeks the appointment of counsel. [Doc. 2].

## II. STANDARD OF REVIEW

Because the Plaintiff is proceeding in forma pauperis, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, under § 1915A the Court must conduct an initial review and identify and dismiss the complaint, or any portion of the complaint, if it is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune to such relief. 28 U.S.C. § 1915A.

In its frivolity review, this Court must determine whether a complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## III. DISCUSSION

To state a claim under § 1983, a plaintiff must allege that he was deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed by a "person" acting under color of state law. See 42 U.S.C. § 1983; Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999); Health & Hosp. Corp. of Marion Cnty. v. Talevski, 599 U.S. __, 143 S.Ct. 1444 (2023).

### A. Parties

The body of the Complaint contains allegations against individuals who are not named as defendants in the caption as required by Rule 10(a) of the Federal Rules of Civil Procedure. [See, e.g., Doc. 1 at 3 (referring to

4

Southern Health Partners)]; see Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties[.]"); Myles v. United States, 416 F.3d 551 (7th Cir. 2005) ("[T]o make someone a party the plaintiff must specify him in the caption and arrange for service of process."); Perez v. Humphries, No. 3:18-cv-107-GCM, 2018 WL 4705560, at *1 (W.D.N.C. Oct. 1, 2018) ("A plaintiff's failure to name a defendant in the caption of a Complaint renders any action against the purported defendant a legal nullity."). The Court also notes that many of the Plaintiff's allegations use pronouns or vague terms such that the Court cannot determine the individual(s) to whom the Plaintiff refers. See, e.g., [Doc. 1 at 2 (referring to "medical Staff" and "officers;" claiming that he "requested again for medical help")]; Fed. R. Civ. P. 8(a)(2) (requiring a "short and plain statement of the claim showing that the pleader is entitled to relief"); Simpson v. Welch, 900 F.2d 33, 35 (4th Cir. 1990) (conclusory allegations, unsupported by specific allegations of material fact are not sufficient); Dickson v. Microsoft Corp., 309 F.3d 193, 201-02 (4th Cir. 2002) (a pleader must allege facts, directly or indirectly, that support each element of the claim). The allegations directed at individuals not named as Defendants, or which are not clearly attributed to any Defendant, are dismissed without prejudice.

The Plaintiff names the Mecklenburg County Jail as a Defendant. However, a jail is not a "person" subject to suit under § 1983. See Brooks v. Pembroke Jail, 722 F.Supp. 1294, 1301 (E.D.N.C. 1989). Accordingly, MCJ is dismissed as a Defendant.

The Plaintiff also names as a Defendant the North Carolina Sheriff's Education and Training Standards Commission. Neither a State nor its officials acting in the official capacities are "persons" under § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). Thus, civil rights suits against a state, its agencies, and its officials sued in their official capacities for damages are barred absent a waiver by the State or a valid congressional override. Kentucky v. Graham, 473 U.S. 159, 169 (1985). Accordingly, the North Carolina Sheriff's Education and Training Standards Commission is dismissed as a Defendant.

The Plaintiff names as a Defendant "Sheriff John Doe"; however, he has not made any allegations against that Defendant whatsoever. See Fed. R. Civ. P. 8(a)(2); Simpson, 900 F.2d at 35; Dickson, 309 F.3d at 201-02. The Plaintiff has failed the most basic pleading requirements and, therefore, the claims against Sheriff John Doe are dismissed.

### B. Deliberate Indifference to a Serious Medical Need

Claims under 42 U.S.C. § 1983 based on an alleged lack of or inappropriate medical treatment fall within the Eighth Amendment's prohibition against cruel and unusual punishment.[5] Estelle v. Gamble, 429 U.S. 97, 104 (1976). To state a claim under the Eighth Amendment, a plaintiff must show a "deliberate indifference to serious medical needs" of the inmate. Id. "Deliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care." Young v. City of Mt. Ranier, 238 F.3d 567, 575-76 (4th Cir. 2001) (citations omitted).

A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay

---

[5] It appears that the Plaintiff was a pre-trial detainee at the relevant times; therefore, his deliberate indifference claims are properly brought under the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment. See City of Revere v. Mass. Gen. Hosp., 463 U.S. 239 (1983). However, the Fourth Circuit has long applied the Eighth Amendment deliberate indifference standard to pretrial detainees' deliberate indifference claims. See Moss v. Harwood, 19 F.4th 614, 624 n.4 (4th Cir. 2021) (noting that, "under Kingsley v. Hendrickson, 576 U.S. 389, 135 S.Ct. 2466, 192 L.Ed.2d 416 (2015), pretrial detainees bringing excessive force claims under the Fourteenth Amendment are no longer required to satisfy the analogous subjective component that governs the Eighth Amendment excessive force claims of convicted prisoners ... [however] the Supreme Court has not extended Kingsley beyond the excessive force context to deliberate indifference claims, ... and neither has our court...."); Mays v. Sprinkle, 992 F.3d 295, 300-02 (4th Cir. 2021) (declining to decide whether a pretrial detainee must satisfy the subjective component of the Eight Amendment deliberate indifference standard).

person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (internal quotation marks omitted). An official acts with deliberate indifference if he had actual knowledge of the prisoner's serious medical needs and the related risks but nevertheless disregards them. DePaola v. Clarke, 884 F.3d 481, 486 (4th Cir. 2018). The prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

Allegations that might be sufficient to support negligence and medical malpractice claims do not, without more, rise to the level of a cognizable § 1983 claim. Estelle, 429 U.S. at 106; Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) ("Deliberate indifference is a very high standard—a showing of mere negligence will not meet it."). To be found liable under the Eighth Amendment, a prison official must know of and consciously or intentionally disregard "an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837; Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998). "[E]ven if a prison doctor is mistaken or negligent in his diagnosis or treatment, no constitutional issue is raised absent evidence of abuse, intentional mistreatment, or denial of medical attention." Stokes v. Hurdle, 393 F. Supp. 757, 762 (D. Md. 1975), aff'd, 535 F.2d 1250 (4th Cir. 1976).

The Plaintiff fails to plausibly allege that he had a serious medical need when he asked a John Doe officer to see medical on October 4. Further, he has not plausibly alleged that Officer Doe knew that the Plaintiff had a serious medical need and deliberately disregarded the same by telling the Plaintiff to submit a kiosk complaint. As for October 17, the Plaintiff fails to explain how the officer(s) who found him in his cell after the stroke were deliberately indifferent in any way. These claims are too lacking in factual support to plausibly state a claim. See Fed. R. Civ. P. 8(a)(2). Accordingly, the claims against the John Doe officers for deliberate indifference to a serious medical need are dismissed without prejudice.

The Plaintiff also fails to plausibly allege that John Doe nurses were deliberately indifferent to a serious medical need on October 7, 2021 when Plaintiff reported that he "was not feeling well." The Plaintiff has failed to plausibly allege that he had a serious medical need on October 7, or that the John Doe nurse was aware of the same and deliberately disregarded the same. To the extent that the Plaintiff suggests that the John Doe nurses were negligent or misdiagnosed him, such is insufficient to state a claim for deliberate indifference to a serious medical need. See Grayson, 195 F.3d at 695. The claims against "Medical Staff John Doe" are, therefore, dismissed.

## C. Municipal Liability

Local governing bodies "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where ... the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell v. Dep't of Social Servs., 436 U.S. 658, 690 (1978); see Mt. Healthy City Sch. Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977) (Eleventh Amendment immunity "does not extend to counties or similar municipal corporations."). Municipal liability under § 1983 cannot be predicated upon a respondeat superior theory. Burgess v. Goldstein, 997 F.3d 541, 562 (4th Cir. 2021). Liability arises only when the offensive acts are taken in furtherance of municipal policy or custom. Id.; see City of Canton, Ohio v. Harris, 489 U.S. 378, 389 (1989) (a municipality can be liable under § 1983 only where its policies are the "moving force" behind the constitutional violation) (quoting Polk Cnty. v. Dodson, 454 U.S. 312, 326 (1981)).

There are three necessary elements for Monell liability. First, the plaintiff must plausibly allege a constitutional harm that stems from the acts of a municipal employee "taken in furtherance of some municipal 'policy or custom.'" Milligan v. City of Newport News, 743 F.2d 227, 229 (4th Cir. 1984) (quoting Monell, 436 U.S. at 694); see also Spell v. McDaniel, 824 F.2d

1380, 1389 (4th Cir. 1987). A policy, custom or practice can exist in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train [employees], that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law." Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003) (quoting Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999)). Second, the plaintiff must allege facts showing that the policy's creation is fairly attributable to the municipality. Spell, 824 F.2d at 1389; see also Owens v. Balt. City State's Attorney's Office, 767 F.3d 379, 402 (4th Cir. 2014) ("Only if a municipality subscribes to a custom, policy, or practice can it be said to have committed an independent act, the *sine qua non* of Monell liability."). Third, the plaintiff must allege an affirmative causal link between the "policy or custom," and the particular injury suffered by the plaintiff. Spell, 824 F.2d at 1389.

A plaintiff can establish the requisite "policy" for Monell liability through a failure to train, if it "reflects a 'deliberate' or 'conscious' choice" to not do so. City of Canton v. Harris, 489 U.S. 378, 389 (1989). Training policy deficiencies can include (1) "express authorizations of unconstitutional

conduct," (2) "tacit authorizations" of such unconstitutional conduct, and (3) failures to adequately "prohibit or discourage readily foreseeable conduct in light of known exigencies of police duty." Spell v. McDaniel, 824 F.2d 1380, 1390 (4th Cir. 1987). No matter which theory is alleged, the plaintiff must point out "a specific deficiency" in training, "rather than general laxness or ineffectiveness in training." Id.; see also, e.g., McDowell v. Grimes, No. GLR-17-3200, 2018 WL 3756727, at *4 (D. Md. Aug. 7, 2018). Second, a plaintiff must establish that the municipality's failure to train showed a "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." Connick v. Thompson, 563 U.S. 51, 61 (2011) (alteration in original). Deliberate indifference is shown if "the need for more or different training is so obvious, and the inadequacy [in training is] so likely to result in the violation of constitutional rights." Harris, 489 U.S. at 390; accord Jordan by Jordan v. Jackson, 15 F.3d 333, 341 (4th Cir. 1994). Finally, the plaintiff must show that "the officer's conduct resulted from said training," or lack thereof. McDowell, 2018 WL 3756727, at *4 (quoting Jones v. Chapman, No. ELH-14-2627, 2015 WL 4509871, at *18 (D. Md. July 24, 2015)).

The Plaintiff alleges that Defendant McFadden, the City of Charlotte, and Mecklenburg County have a policy and custom of deliberate

12

indifference, and that they failed to properly train their employees. [Doc. 1 at 3-4, 7]. He claims that the lack of adequate medical care and diagnosis caused him to suffer a stroke, catch COVID-19, and sustain various injuries. [Id. at 3-7]. The Plaintiff's vague and conclusory allegations fail to allege any facts supporting Monell liability against any Defendant. The claims against Sheriff McFadden, Mecklenburg County, and the City of Charlotte are, therefore, dismissed.

### D. Motion to Appoint Counsel

The Plaintiff asks the Court to appoint counsel to represent him, arguing that he is blind and suffers from "brain loss" due to a stroke; that he does not know the fundamentals of litigation; that he is paralyzed and cannot read; that he has a colorable claim that will likely prevail; that the Defendants are more likely to settle the matter if the Plaintiff has a lawyer; that the Plaintiff has been unable to obtain legal assistance due to his stroke damage; that he cannot comprehend long conversations enough to speak to an attorney; and that he does not have any family to assist him. [Doc. 2].

There is no absolute right to the appointment of counsel in civil actions such as this one. Therefore, a plaintiff must present "exceptional circumstances" in order to require the Court to seek the assistance of a private attorney for a plaintiff who is unable to afford counsel. Miller v.

Simmons, 814 F.2d 962, 966 (4th Cir. 1987). The Plaintiff has failed to demonstrate the existence of exceptional circumstances that would warrant the appointment of counsel. Although the Complaint has failed to state a claim, it appears as though the Plaintiff is capable of prosecuting this action. [See Docs. 1, 2, 14]. The Motion is, therefore, denied.

## IV. CONCLUSION

In sum, the Plaintiff has failed to state a claim against any Defendant pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(iii) and the Complaint is dismissed without prejudice. The Plaintiff's Motion to Appoint Counsel is denied.

The Court will allow Plaintiff thirty (30) days to amend his Complaint, if he so chooses, to properly state a claim upon which relief can be granted, in accordance with the terms of this Order. Any amended complaint will be subject to all timeliness and procedural requirements and will supersede the Complaint. Piecemeal amendment will not be permitted. Should Plaintiff fail to timely amend his Complaint in accordance with this Order, the Court will dismiss this action without further notice.

## O R D E R

**IT IS, THEREFORE, ORDERED** that:

1. The Complaint [Doc. 1] is **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

2. The Plaintiff shall have **thirty (30) days** in which to amend his Complaint in accordance with the terms of this Order. If Plaintiff fails to so amend his Complaint, the matter will be dismissed without further notice.

3. The Plaintiff's Motion to Appoint Counsel [Doc. 2] is **DENIED**.

The Clerk is respectfully instructed to mail the Plaintiff a blank § 1983 complaint form and a copy of this Order.

**IT IS SO ORDERED.**

Signed: August 31, 2023

Martin Reidinger
Chief United States District Judge